**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

FILED
03 SEP -8 PM 12: 47
U.... ....
N.D. OF ALABAMA

DAVEY L. ARNOLD,                    )
                                    )
       **Plaintiff,**                )
                                    )
vs.                                 )          **Civil Action No. CV-03-S-927-S**
                                    )
JIM WALTER RESOURCES, INC.,         )
                                    )
       **Defendant.**               )

**ENTERED**
SEP ˙ ˙˙˙3

## MEMORANDUM OPINION

Plaintiff, Davey L. Arnold, asserts a claim against Jim Walter Resources, Inc., under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, for its failure to hire him as a production foreman.[1] This action is before the court on defendant's motion to compel arbitration and to dismiss or stay litigation.

The following facts are pertinent to the disposition of this motion. Plaintiff began employment with defendant during July of 1976 as a union employee. Shortly thereafter, he was promoted to the position of Section Foreman, which was a salaried position. Plaintiff remained a salaried employee until his employment was terminated through a reduction-in-force during November of 2000.

Defendant implemented an alternative dispute resolution policy ("ADR policy") applicable to all salaried employees, effective June 1, 1998. The ADR policy contained the following provisions:

---

[1]Doc. no. 1 (Complaint).



**Agreement to Arbitrate**

Each salaried employee agrees, as a condition of his or her continued employment, that any dispute regarding a Covered Claim arising out of, or relating to, *the Company's consideration of the employee for employment*, the terms or conditions of the employee's employment with the Company, the termination of the employee's  employment with the Company, and the relationships with other salaried employees which result from the employee's employment, will be settled by binding Arbitration administered by the American Arbitration Association under the rules of this ADR Policy and AAA's National Rules for the Resolution of Employment Disputes.  This means that either you or the Company may require the other to submit to a dispute regarding a Covered Claim to final, binding Arbitration.  This also means that disputes regarding Covered Claims between you and another salaried employee of the Company are subject to binding arbitration if the dispute arises out of your employment with the Company.  Furthermore, the Company and each employee agree that the arbitrator is empowered to award all damages to the prevailing party that would otherwise be recoverable had the matter been adjudicated in court, including, but not limited to, attorney's fees, costs, reinstatement and punitive damages.

The employee also agrees that, as a condition of his or her continued employment, the ADR Policy, including the mandatory, binding Arbitration Option, is covered by the Federal Arbitration Act and is fully enforceable.  The employee understands and agrees that, if either the Company or the employee exercises its option to require Arbitration, any claim arbitrated will be heard solely by the Arbitrator appointed to hear the dispute and not by a judge or jury in any federal, state or local court.  Arbitration in accordance with the ADR Policy does not prevent the employee from  filing a charge with the Equal Employment Opportunity Commission or appropriate administrative agency.

. . .

**Employees Covered Under the ADR Policy**

*All salaried employees who are employed by Jim Walter when the ADR Policy becomes effective* and all salaried employees employed after the ADR Policy becomes effective *will be subject to this ADR Policy.  In addition, once employed by Jim Walter after the ADR Policy has become effective, the employee will continue to be subject to this ADR Policy even after retirement*

*or any other form of separation from Jim Walter*. Also, all representatives, successors and assignees of the employee and the Company are covered by the ADR Policy.

All persons covered by this ADR Policy are both required to comply with the ADR Policy, including Arbitration of a Covered Claim, and are also fully entitled to invoke or assert this ADR Policy to resolve any such dispute, including the right to request Arbitration, in any action regarding a Covered Claim, but also that a salaried employee may require another salaried employee to arbitrate a dispute regarding a Covered Claim. As such, all employees, when defending against a Covered Claim brought by another employee, have the same rights as the Company under the ADR Policy.

**Covered Claims**

The Covered Claims that are required to be Arbitrated (and that may be Mediated if both sides agree) include, except as specifically excluded below:

- *any claim or controversy arising out of or relating to the applicant's or employee's consideration for employment with the Company*; and

- the terms or conditions of the employee's employment with the Company or the termination of that employment, which concerns a right, privilege or interest recognized by federal, state or local law.

Such Covered Claims include, but are not limited to, claims, demands or actions under:

- Title VII of the Civil Rights Act of 1964 (Title VII);
- the Civil Rights Act of 1866;
- the Civil Rights Act of 1991;
- the Equal Pay Act;
- the Age Discrimination in Employment Act (ADEA);
- the Employee Retirement Income Security Act of 1974 (ERISA);
- the Fair Labor Standards Act;
- the Rehabilitation Act of 1973;
- the Americans with Disabilities Act (ADA); and
- the Family and Medical Leave Act (FMLA).

3

Such Covered Claims also include:

- any claim of retaliation, including claims under Alabama Code Section 25-5-11.1;
- claims for breach of express or implied contract, covenant or other promise;
- tort claims (including, but not limited to, negligent or intentional injuries, defamation and termination of employment in violation of public policy); and
- claims under any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, the terms or conditions of employment or the termination of employment, either now or existing or hereafter created.

Any dispute regarding a Covered Claim which is brought after the ADR Policy becomes effective is subject to binding Arbitration even if the alleged act or omission occurred prior to the effective date of the ADR Policy.

**Claims That Are Not Covered**

Claims that are not subject to the ADR Policy are:

- claims for unemployment compensation benefits;
- claims for injunctive and/or other equitable relief and/or damages for unfair competition and/or the use and/or the unauthorized disclosure of trade secrets or confidential information;
- claims under the Mine Safety and Health Act, 30 U.S.C. § 801 *et seq.* (MSHA);
- claims seeking injunctive relief necessary to ensure workplace safety;
- claims based upon an employee pension or benefit plan the terms of which contain an arbitration or other non-judicial dispute resolution procedure, in which case the provisions of such plan shall apply;
- criminal charges;
- claims by the employee for workers' compensation benefits or compensation, except for claims of retaliation under Alabama Code Section 25-5-11.1; or

4

> • matters involving the National Labor Relations Act.[2]

Prior to the policy's implementation, defendant conducted meetings for salaried employees, during which the employees viewed a videotape explaining the terms of the policy and were provided a copy of the ADR policy.   In an affidavit, Harold Rice, defendant's Vice President of Law and Human Resources, described the meetings:

> At these meetings, the salaried employees were informed that, if they continued to work after the June 1, 1998 effective date, they would be accepting the terms of the ADR Policy. The ADR Policy states: "[W]hen the ADR Policy becomes effective on June 1, 1998, each salaried employee who accepts employment with or continues to work for the Company will have accepted all of the terms of this ADR Policy, including binding Arbitration of all Covered Claims." In the videotape shown at the meetings, the narrator explained: "This . . . plan is the exclusive means of resolving workplace problems and disputes within Jim Walter Resources, including those involving individual rights described and protected by law. With the exception fo a few categories of legal claims not subject to the policy, by accepting or continuing employment at Jim Walter Resources, you agree to resolve all disputes with Jim Walter Resources through the Alternative Dispute Resolution Policy instead of through the court system."[3]

Plaintiff attended a meeting during May of 1998, and recorded his name on a sign-in sheet.

He also signed an acknowledgment and receipt on May 19, 1998, which reads as follows:

> I acknowledge that I have received a copy of Jim Walter Resources, Inc.'s Alternative Dispute Resolution ("ADR") Policy for Salaried Employees, which goes into effect on June 1, 1998.   I understand that it is my responsibility to become familiar with the information in the ADR Policy before the June 1, 1998 effective date.

> I acknowledge that the ADR Policy contains an arbitration provision that requires all salaried employees to arbitrate all claims under Title VII of the

---

[2]Doc. no. 4 (Affidavit of Harold Rice), ex. B, at 3-5 (emphasis supplied).

[3]Doc. no. 4 (Affidavit of Harold Rice) (citation to the record omitted).

Civil Rights Act of 1964, the Americans With Disabilities Act, the Age
Discrimination in Employment Act, as well as many other claims specifically
defined in the ADR Policy, in lieu of litigating those claims in court.

I understand that all salaried employees of Jim Walter Resources, Inc.
are subject to this ADR Policy. I acknowledge that this ADR Policy contains
a provision which states that, by continuing my employment with Jim Walter
Resources, Inc. after June 1, 1998, I am bound by the ADR Policy.[4]

Plaintiff continued to be employed by defendant until November of 2000, when he

"was relieved of duty due to economic conditions of the coal market."[5]  Plaintiff alleges that

defendant's Director of Human Resources wrote him on February 14, 2001, advising him that

he would be considered for re-employment in the event defendant's financial circumstances

improved.[6]

During July of 2001, plaintiff learned that defendant was soliciting applications for

the position of production foreman.  Plaintiff applied for the position, but was not hired.[7]

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity

Commission, and filed a judicial complaint on April 22, 2003.[8]

Defendant contends that the arbitration clause covers plaintiff's failure to hire claim.

Plaintiff asserts that the clause is inapplicable, because "[t]he events which [plaintiff]

challenges arose after his separation from employment.  [Plaintiff] was no longer an

---

[4]*Id.*, ex. C.

[5]Doc. no. 1 (Complaint) ¶ 8.

[6]*Id.* ¶ 9.

[7]*Id.* ¶¶ 10, 12.

[8]*Id.* ¶ 2.

6

employee of Jim Walter Resources when his cause of action, failure to hire, accrued."[9]

Plaintiff also contends that the arbitration clause excludes claims for injunctive relief, which

he asserts is the type of relief sought in this action. Defendant's reply emphasizes that the

arbitration clause specifically applies to employees even after they retire or are otherwise

separated from employment. Defendant further observes that the exclusion of claims for

injunctive relief applies only to claims based upon unfair competition or unauthorized

disclosure.[10]

Section 2 of the Federal Arbitration Act "makes 'valid, irrevocable, and enforceable'

only two types of contracts: those relating to a maritime transaction and those involving

commerce." *Bernhardt v. Polygraphic Company of America, Inc.,* 350 U.S. 198, 200, 76 S.

Ct. 273, 275, 100 L. Ed. 2d 199 (1956). The Supreme Court directs district courts to accord

an expansive construction to the phrase "involving commerce." *See Allied-Bruce Terminix

Cos., Inc. v. Dobson,* 513 U.S. 265, 268, 115 S. Ct. 834, 836, 130 L. Ed. 2d 753 (1995).

Additionally, the Court has construed the phrase "involving commerce" as being the

functional equivalent of "affecting commerce": a phrase that "normally signals Congress'

intent to exercise its Commerce Clause powers to the full." *Id.* at 273, 115 S. Ct. at 839; *see

also Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, 1060 (11th Cir. 1998)

(Cox and Tjoflat, JJ., concurring) (noting that "[t]he FAA's provisions concerning the

---

[9]Doc. no. 6 (Plaintiff's Opposition to Defendant Jim Walter Resources, Inc.'s Motion to Compel Arbitration and to Dismiss or Stay Litigation) ¶ 2, at 1.

[10]Doc. no. 7 (Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Compel Arbitration and to Dismiss or Stay Litigation).

validity of arbitration clauses reach to the edge of Congress's power under the Commerce Clause"). The Supreme Court recently held that employment discrimination claims may be subjected to mandatory arbitration. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001).

Plaintiff has not contested the applicability of the Federal Arbitration Act to the arbitration clause at issue here. Indeed, the ADR policy signed by plaintiff contains the following provision: "[t]he employee also agrees that, as a condition of his or her continued employment, the ADR Policy, including the mandatory, binding Arbitration Option, is covered by the Federal Arbitration Act and is fully enforceable." Moreover, defendant has offered the affidavit of Harold Rice, Vice President – Law and Human Resources, who stated: "Jim Walter is in the business of mining bituminous coal and is engaged in interstate commerce through, among other things, the sale of coal, interstate communications and the purchase of equipment."[11] The court finds the foregoing sufficient to conclude that the arbitration agreement pertained to transactions that substantially affected interstate commerce, and that the Federal Arbitration Act applies.

The threshold issue confronting this court is that of determining whether the arbitration clause found in defendant's ADR policy covers the claim asserted by plaintiff against defendant.

> The Federal Arbitration Act governs the question of who must decide issues of arbitrability. Under the Act, a district court must compel arbitration if the

---

[11]Doc. no. 4 (Affidavit of Harold Rice), at 3 ¶ 8.

parties have agreed to arbitrate their dispute. 9 U.S.C. §§ 2, 3 (1988). However, if the validity of the agreement to arbitrate is at issue, a district court, not a panel of arbitrators, must decide if the arbitration clause is enforceable against the parties. *Id.* § 4; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 87 S. Ct. 1801, 1806, 18 L. Ed. 2d 1270 (1967) (holding that if the making of the arbitration agreement is an issue "the federal court may proceed to adjudicate it"). Simply put, parties cannot be forced to submit to arbitration if they have not agreed to do so. *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478, 109 S. Ct. 1248, 1255, 103 L.Ed.2d 488 (1989); *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419 (11th Cir. 1990) (per curiam). Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).

*Chastain v. Robinson-Humphrey Company, Inc.*, 957 F.2d 851, 853-54 (11th Cir. 1992). The

Supreme Court also has instructed that

questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability.

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103

S. Ct. 927, 941-42, 74 L. Ed. 2d 765 (1983). "Thus, as with any other contract, the parties'

intentions control, but those intentions are generously construed as to issues of arbitrability."

*Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.

Ct. 3346, 3353-54, 87 L. Ed. 2d 444 (1985).

Plaintiff asserts that the arbitration clause does not encompass his failure to hire claim,

because the claim accrued following plaintiff's separation from employment by defendant.

Plaintiff contends, therefore, that because he no longer was a salaried employee, the ADR policy does not apply to his claim.

At the outset, the court observes that the scope of the ADR policy at issue here unquestionably is unmatched in breadth among arbitration clauses this court has considered. By its terms, the policy covers, with few exclusions, *all* claims relating to *all* aspects of a salaried employee's employment — *i.e.,* consideration for employment, terms and conditions of employment, and termination. Moreover, the policy applies to all salaried employees who were employed by defendant at the time the policy became effective, all subsequently hired salaried employees, and, most significantly, *even those salaried employees who retired or otherwise were separated from employment with defendant.* Further, the policy specifically states that it covers claims asserted under the Age Discrimination in Employment Act of 1967 — the basis of plaintiff's claim.

The record contains evidence that plaintiff received a copy of the ADR policy and attended a meeting during which the policy was explained. The policy explicitly states that salaried employees who were employed on the policy's effective date of June 1, 1998 were covered by its provisions, and that it applies to those employees even after retirement or other separation from employment. It is undisputed that plaintiff was a salaried employee on that date, and that his employment continued until his termination through a reduction-in-force during November of 2000.

It is well settled under Alabama law that continued at-will employment constitutes

10

sufficient consideration for an agreement to arbitrate. *See Ex parte McNaughton*, 728 So. 2d 592, 595-96 (Ala. 1998) ("This Court has consistently held that an employer's providing continued at-will employment is sufficient consideration to make an employee's promise to his employer binding.").

Because plaintiff's claim is premised on the ADEA — a "covered claim" under the terms of the policy — and relates to defendant's consideration of him for employment, albeit *re-employment*, the court concludes that the policy must be enforced.

Plaintiff's second argument that his claim is not covered by the arbitration clause because he seeks equitable remedies does not warrant discussion, for the reasons stated in defendant's reply brief.[12]

For all of the foregoing reasons, the court concludes that the motion to compel arbitration is due to be granted. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this __8th__ day of September, 2003.

United States District Judge

---

[12]*See id.* at 2-3 ¶ 4.

11